BELLINGER, District Judge.
The questions for decision arise upon motions to quash four several indictments against the defendant, Erastus D. Edgerton, and upon pleas in abatement to said indictments. The motions and pleas are upon the same grounds, except that it is alleged as a ground of separate plea that said defendant was required by a subpoena to appear before the grand jury as a witness, and that he did appear in obedience to such subpoena, and was sworn and examined and required to testify to matters and things relating to and material to the charge made in the indictment against him, and this without being informed or having knowledge that the grand jury had under consideration any matter involving a criminal charge against him. The grounds- upon which it is sought by both motions and pleas to have the indictments quashed are that one S. R. Flynn was allowed to testify as an expert before the grand jury, without being first examined as to his qualifications as an expert; that said Flynn was permitted to remain in the grand jury room while other witnesses were being examined in connection with the charge against the defendant, and propounded questions to such witnesses; that the grand jury were not selected according to law; and that, as to a portion of such jury, those comprising it were not possessed of the qualifications required by law; and that the foreman of the grand jury and at least li other members thereof, who found and returned the indictments against the defendants, were in such a *375 hostile and vindictive state of mind towards him as prevented them from acting impartially; and it is alleged in the pleas that the defendant was prejudiced in his rights by the several matters complained of. The pleas are supported by the affidavits of the defendant as to the facts upon which they rely. I shall consider but two questions in the case, inasmuch as these will dispose of the demurrers and motions, and are questions of universal application. These questions relate to the presence and conduct of the expert Flynn in the grand jury room, and to the examination of the defendant, Edgerton, as a witness against himself, under compulsion of a subpoena.
It is not necessary to inquire how far the laws of the states apply in criminal proceedings in the courts of the United States, under section 721 of the Kevised Statutes. It is beyond question that no person, other than a witness undergoing examination, and the attorney for the government, can be present during the sessions of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. The cases where bailiffs and stenographers have on occasions been temporarily present in the grand jury room are only apparent exceptions. The rule, in its spirit and purpose, admits of no exception. In the present case it is suggested that the only testimony heard while the expert Flynn was present related to the production of certain books of account, touching which the expert interrogated the witness who was testifying as to his possession of such books or other documents, and that this could not have prejudiced the defendant. The court cannot know that this suggestion represents the fact. The case as presented is one where an expert was not only present in the grand jury room while a witness was testifying, but took part in the investigation by interrogating the witness. The court cannot inquire as to the effect of- this conduct. There must not only be no improper' influence or suggestion in the grand jury room, but, as suggested in Lewis v. Commissioners, 74 N. C. 194, there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury? It is common knowledge that expert witnesses are more likely to testify from interest than any other class. They usually testify to support or overthrow a theory, and frequently, if not usually, after an ex parte investigation, which strongly predisposes them in favor of the party or cause in whose services they are enlisted. In the case of U. S. v. Kilpatrick, 16 Fed. 765, the court quashed an indictment upon motion upon a case much like the present as to this point.
It is fatal to the indictments that the defendant was called to testify in the particular matter from which they resulted, without being informed or knowing that his own conduct was the subject under investigation. In the case of U. S. v. Brown, 1 Sawy. 531, Fed. Cas. No. 14,671, it is held that there is no such thing as a criminal action or proceeding, within the meaning of the Oregon statutes, which protect a defendant in a criminal case from testifying against himself, until an indictment has been filed in court, and that the examination of a person before the grand jury, although such an examination *376 tends to connect him with a criminal offense, is not the investigation of a “criminal charge.” But the supreme court of the United States, in Counselman v. Hitchcock, 142 U. S. 547., 12 Sup. Ct. 195, holds otherwise. There it is held that under the fifth amendment to the constitution of the United States, which declares that no person shall be compelled in any criminal case to be a witness against himself, an examination of a person before the grand jury in an investigation into certain alleged violations of the interstate commerce act, where his testimony might tend to criminate him, constitutes a “criminal case,” within the meaning of the constitutional provision. The adjudged cases in both the federal and state courts are fully reviewed in the opinion. It makes no difference, in my judgment, that the case was one where the witness declined to answer, and the question decided was raised on habeas corpus proceedings to release him from imprisonment for contempt in such refusal. The court holds, upon obvious principles, that the constitutional provision referred to, as well as the like provisions adopted by the various states,.must have a liberal construction for the protection of personal rights. Neither evásion nor subterfuge can be permitted to destroy them.
It is argued that it must be made to appear that the defendant has suffered injury in what has been done, before the objection that is made can be sustained. This is true as to technical requirements and formalities, but not as to matters of substance. Where a witness is compelled to testify against himself, the injury inheres in the violence done to his rights. It is not susceptible of proof, nor the policy of the law to require it, and the injury done to the public in such case outweighs that suffered by the defendant. It is a matter of the highest public policy that crime shall be punished by legal methods. When these are disregarded, there is.the mob, between which, in the pursuit of vengeance, and the officers of the law, acting.in its name, but in disregard of it, there is no distinction.
Without these questions, I should still feel it my duty to quash these indictments, in view of the passion under which the grand jury seems to have acted. The report filed is so exceptional as to excite surprise. The feeling out of which it grew may be explained by the circumstances existing at the time, and, while what has been done may be thus excused, it only adds to the reasons for quashing these indictments, to the end that whatever action is required may be had without excitement, and upon mature deliberation. The demurrers to the several pleas are overruled, and the motions to quash allowed.